UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE E. WILSON, <br><br>  Plaintiff, <br><br> v. <br><br> BANK OF AMERICA PENSION PLAN FOR LEGACY COMPANIES, et al., <br><br>  Defendants. | Case No. 18-cv-07755-TSH <br><br> **ORDER GRANTING IN PART AND DENYING IN PART FIDELITY'S MOTION TO DISMISS** <br><br> Re: Dkt. No. 20 |

Plaintiff Bruce E. Wilson has sued Defendants Bank of America Corporation, Bank of America Corporate Benefits Committee, The Bank of America Pension Plan, and Fidelity Workplace Services, LLC ("Fidelity"). The gist of this case is that Wilson worked for Bank of America from 1972 to 1988 and then again from 1999 to 2000. As a bank employee, he accrued pension benefits during the time of his employment. In May 2007, he received by mail a pension benefit statement on Bank of America letterhead out of the blue. It showed that his Plan benefit as of July 1, 2007 (when he was 59 years old), was $687.82 as a monthly benefit for life, or a lump sum of $124,961.89.

As his sixties progressed, Wilson went online to NetBenefits and requested pension statements testing various scenarios based on different benefit commencement dates and forms of benefit. Fidelity maintains the NetBenefits website as part of the plan administrator's efforts to satisfy the obligation in ERISA § 105(a), 29 U.S.C. § 1025(a), to provide pension benefit

statements. On some occasions, Wilson printed out the resulting statements. For example, in September 2015, Wilson received a pension benefit statement from NetBenefits showing his pension benefit under two scenarios. The statement showed that as of January 1, 2016, at age 68 years and one month, he could receive a lump-sum benefit of $83,902.53, representing 50 percent of his Plan pension, plus a monthly benefit of $551.43 for life. Alternatively, at age 68 years and two months, Wilson could receive a lump-sum benefit of $108,400.41, representing 66 percent of his Plan pension, plus a monthly benefit of $373.03 for life.

In early 2017, when Wilson was more than 69 years old and approaching the point of mandatory distributions at age 70 ½, he requested a lump-sum distribution of his Plan benefit. In April 2017, Fidelity informed Wilson that it was denying his request due to a previous distribution of his benefit in 1991. Fidelity sent Wilson a barely legible document dated August 1991 entitled "Bankameraccount Plan Final Distribution." The document states, "If you selected a lump sum distribution, your final settlement check is enclosed." The document also states, "Payment option – single sum settlement" and the amount of $35,355.44. Fidelity offered no explanation for why it had never referred to this 1991 document in the years when it had been providing him with statements of his pension benefits.

Wilson contested the denial of his request. The Bank of America Claims Review Committee stated that following the termination of his first period of employment with the bank in 1988, the Plan paid him a lump sum of $35,355.44, representing the entire amount of his benefit. For his second period of employment (1999-2000), the Committee stated that he was paid a residual distribution of $4,544.22 on June 9, 2017. The Committee apologized for the mistaken modeling statements Wilson had received. Wilson appealed, which the Bank of America Benefits Appeals Committee denied with the same explanation. For his part, Wilson says he relied on those statements in his retirement planning, and he does not recall receiving a Plan distribution in 1991.

Wilson sues under ERISA and state law. This order addresses Fidelity's motion to dismiss. Wilson's third claim for relief alleges that Fidelity was a fiduciary of the Plan and that it violated its fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a). His fifth claim for relief

alleges professional negligence against Fidelity under state law. And his sixth claim for relief alleges negligent misrepresentation against Fidelity, also under state law. The Court addresses each claim in turn.

**A.     ERISA**

The problem with Wilson's breach of fiduciary duty claim against Fidelity is the lack of any plausible factual allegations in the First Amended Complaint ("FAC") establishing that Fidelity is or was a Plan fiduciary under ERISA. ERISA states that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21), 29 U.S.C. § 1002(21). Paragraph 48 of the FAC parrots the language of the first and third types of fiduciaries, but this is a classic example of threadbare and conclusory allegations that merely recite the element of a claim. It doesn't pass muster on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("'[A] formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The FAC also alleges at paragraphs 9-11 that Fidelity contracted with the Plan's Benefits Committee and/or with Bank of America to maintain the NetBenefits website on behalf of the Plan and that the site allows employees to access online retirements tools, including benefit projections and estimates. And paragraph 23 alleges that Fidelity denied Wilson's 2017 request for the lump-sum distribution.

But those allegations also do not establish that Fidelity is a fiduciary. "[C]onsultants who perform their usual professional functions in rendering . . . consulting services to an employee benefit plan are not considered fiduciaries of the plan solely by virtue of rendering such services." *CSA 401(k) Plan v. Pension Professionals, Inc.*, 195 F.3d 1135, 1139 (9th Cir. 1999). "Similarly . . . persons who have no power to make decisions as to plan policy interpretations, practices or

3

procedures but who perform specific administrative functions within a framework of policies, interpretations, rules, practices and procedures made by others are not deemed fiduciaries of the plan." *Id*. Examples of ministerial functions that do not give rise to fiduciary status include preparation of employee communication material, calculation of benefits, application of rules to determine benefits, advising participants of their options under the plan, preparation of reports concerning participants' benefits, and processing of claims. *Id*. at 1138 n.2. "To become a fiduciary, the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 722 (9th Cir. 1997).

Here, the activities Fidelity is alleged to have done are non-fiduciary in nature. As to the NetBenefits website, "providing [plaintiff] with an estimate of his future pension benefits was not a fiduciary task." *Livick v. The Gillete Co.*, 524 F.3d 24, 29 (1st Cir. 2008). Paragraph 23 comes closer with its allegation that "[i]n April 2017, Fidelity informed Mr. Wilson that *it* was denying his request due to a previous distribution of his benefit in 1991." (emphasis added). "'[T]he authority to grant, deny, or review denied claims'" does make someone a fiduciary. *King v. Blue Cross and Blue Shield of Illinois*, 871 F.3d 730, 745 (9th Cir. 2017) (quoting *Kyle Railways, Inc. v. Pacific Administration Services, Inc.*, 990 F.2d 513, 517 (9th Cir. 1993)). But the allegation that Fidelity decided the claim is conclusory. The specific facts alleged in the FAC and the attached documents leave it just as plausible that Fidelity was simply processing claims or communicating with Wilson. For example, in Exhibit G to the FAC Wilson states his belief that Fidelity was the administrator of the Plan and that Fidelity told him his claim was denied. However, paragraph 7 of the FAC alleges that the Bank of America Corporation Corporate Benefits Committee is the Plan administrator, and Exhibit H to the FAC states that the Committee – not Fidelity – denied Wilson's claim. This state of affairs falls short of "allegations plausibly suggesting (not merely consistent with)" fiduciary status for Fidelity because they are also consistent with non-fiduciary status. *Twombly*, 550 U.S. at 557. To be clear, there is nothing wrong with pleading in the alternative, *see* Fed. R. Civ. Proc. 8(d)(2), and for that matter, it's not

inconsistent to allege that someone other than the formal Plan administrator is also a fiduciary. *See King*, 871 F.3d at 745-46. Rather, the Court's point is that the FAC indicates Wilson's unilateral belief that Fidelity denied his claim but lacks sufficient factual allegations for the Court to determine that there is a plausible suggestion this is true. *See Iqbal*, 556 U.S. at 681.

The Court therefore dismisses Wilson's third claim for relief with leave to amend.

**B.    State Law Claims**

**1.    ERISA Preemption**

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ." ERISA § 514(a), 29 U.S.C. § 1144(a). Fidelity argues that Wilson's state law claims against it are preempted. However, the Court disagrees. The Ninth Circuit's decision in *Paulsen v. CNF, Inc.*, 559 F.3d 1061 (9th Cir. 2009), disposes of the preemption argument.

In *Paulsen*, the plaintiffs were former employees of CNF, which went through a reorganization in which an underperforming subdivision was spun off into a new company, CFC. The plaintiffs were all in that division. With the division spinoff there was also a spinoff of part of the defined benefit pension plan in which the plaintiffs were participants, and they became members in a new plan sponsored by CFC. In connection with the spinoff, CNF engaged Towers Perrin to provide actuarial services to value the benefit liabilities and associated assets to be transferred to the CFC-sponsored plan. After the spinoff, CFC declared bankruptcy and distress terminated its pension plan, which was then determined to be underfunded by $216 million. This resulted in the Pension Benefit Guaranty Corporation becoming the trustee of the defunct plan, and it pays reduced benefits to participants of distress-terminated plans. The plaintiffs sued a number of defendants for several claims, including Towers Perrin for professional negligence under state law in valuing the plan liabilities to be transferred at spinoff and in certifying post-spin off that the new plan was adequately funded. *Id*. at 1065-66.

Towers Perrin argued, as Fidelity does here, that ERISA preempted the state law claim. The Court of Appeals noted that "the Supreme Court has instructed that a law relates to an employee benefit plan if it has either a connection with or reference to such a plan." *Id*. at 1082

5

(citation and quotation marks omitted). First the Court addressed the "reference to" preemption inquiry. "To determine whether a law has a forbidden reference to ERISA plans, we ask whether (1) the law acts immediately and exclusively upon ERISA plans, or (2) the existence of ERISA plans is essential to the law's operation." *Id*. (citations and quotation marks omitted). The Court decided there was no "reference to" preemption because "[t]he Employees' professional negligence claims are based on common law negligence principles and California Civil Code §§ 1708 and 1714(a). These laws do not act 'immediately and exclusively' on ERISA plans, and the existence of an ERISA plan is not essential to these laws' operation." *Id*.

Turning to "connection with" preemption, the Court explained that "[w]e have employed a 'relationship test' in analyzing 'connection with' preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member, between plan and employer, between employer and employee." *Id*. "Under the relationship test, the Employees' state law claims do not encroach an ERISA-regulated relationships. The duty giving rise to the negligence claim runs from a third-party actuary, i.e., a non-fiduciary service provider, to the plan participants as intended third party beneficiaries of the actuary's service contract." *Id*. at 1083. "At most" the plaintiffs' claims "might interfere with a relationship between the plan and its third-party service provider." *Id*. Accordingly, the Court held that the state law claim was not preempted.

*Paulsen*'s analysis is controlling, at least here where Fidelity contests its fiduciary status. The state laws Wilson sues under do not act immediately and exclusively on ERISA plans. And the existence of an ERISA plan is not essential to these laws' operation. And, if Fidelity is not a fiduciary, then the state law claims do not bear on an ERISA-regulated relationship. Of course, if Wilson amends his FAC to clearly allege facts establishing that Fidelity is a fiduciary, then at the end of the day he cannot recover on an ERISA claim against Fidelity *and* a state law claim against it. Succeeding on the former would consign the latter to preemption.

### 2. Professional Negligence

Preemption aside, Fidelity argues that Wilson has not pled the elements of his state law claims. As to professional negligence, Fidelity argues that Wilson fails to allege facts showing

6

that it owed him a duty. The Court disagrees.

The FAC alleges facts that plausibly suggest Wilson was an intended third-party beneficiary of Fidelity's service contract with Bank of America or the Committee. *See Paulsen*, 559 F.3d at 1079-80. The FAC alleges that Fidelity contracted with the bank or the Committee to maintain the NetBenefits website that provided benefit statements to the bank's employees and allowed them to make benefit projections and estimates. FAC ¶¶ 9-11. The FAC does not say that Fidelity's contract expressly lists the bank's employees as intended beneficiaries. However, "'[i]t is not necessary that an express beneficiary be specifically identified in the relevant contract; he or she may enforce it if he or she is a member of a class for whose benefit the contract was created.'" *Paulsen*, 559 F.3d at 1079 (quoting *Outdoor Servs., Inc. v. Pabagold, Inc.*, 185 Cal. App. 3d 676, 681 (1986)). Given the FAC's allegations about the use of NetBenefits by Plan participants, Wilson is a member of a class for whose benefit the contract was created. Accordingly, Wilson has alleged facts sufficient to show the existence of a duty, and Fidelity's motion to dismiss this claim is denied.

### 3. Negligent Misrepresentation

Fidelity also argues that Wilson fails to state a claim for negligence misrepresentation. The elements of negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). Fidelity argues that Wilson has not alleged facts showing the first, second, and fourth elements, particularly given the heightened pleading standard in Rule 9(b). *See Neilson v. Union Bank of America, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.")

Wilson has alleged misrepresentations of past or existing facts, at a minimum in Exhibits D and E to the FAC. These are pension estimates that Wilson printed from Fidelity's NetBenefits website in September and November 2015. They both state under "assumption details" in

"scenario 1" and "scenario 2" that the vesting service is "17.58 years." That was a past fact. At the time Wilson received these pension estimates, he no longer worked at Bank of America. It is true that the pension estimates themselves were forward-looking numbers meant to model different pension scenarios, but they were modeled on the assumption that Wilson's pension eligibility was based on an already completed 17.58 years of vested service. This was the past fact that the Committee later told him was untrue.

Wilson also pleads justifiable reliance. It's true that Fidelity's pension estimates stated that "if there is any discrepancy between the information shown here, and your actual personal data and the provisions reflected in the Plan document, the provisions in the Plan document as applied to your actual personal data will govern." But the whole point of NetBenefits was to allow Plan participants to track the value of their pension and model different retirement scenarios. Wilson's allegations that he used this sophisticated online tool for its intended purpose are sufficient to plead justifiable reliance at the pleading stage.

Still, Fidelity is correct that one element of the claim is not sufficient pleaded: There are no allegations showing that Fidelity lacked reasonable grounds for believing the information it provided Wilson to be true. Wilson argues that if the alleged 1991 lump sum distribution actually does defeat his ERISA claim on the merits, then information about that payment was "obviously" available to Fidelity in the 2001-2017 period, and it had no reasonable grounds to tell him his pension would be calculated based on 17.58 years of vested service. However, there are no facts alleged in the FAC to that effect.

Accordingly, the Court dismisses this claim with leave to amend.

## C. Motion to Strike

Both sides agree that if the Court dismisses the state law claims, it should also strike Wilson's demand for a jury trial because there is no right to a jury trial under ERISA. However, because the Court denies Fidelity's motion to dismiss the state law professional negligence claim, it also denies the motion to strike.

## D. Conclusion

The Court **GRANTS** Fidelity's motion to dismiss **IN PART** and **DENIES** it **IN PART**.

Wilson's third and sixth claims for relief are dismissed with leave to amend. His fifth claim for relief is not dismissed. Fidelity's motion to strike is **DENIED**. Any amended complaint is due within 30 days.

**IT IS SO ORDERED.**

Dated: June 20, 2019

_____
THOMAS S. HIXSON
United States Magistrate Judge