UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE E. WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA PENSION PLAN FOR LEGACY COMPANIES, et al.,<br><br>    Defendants. | Case No. 18-cv-07755-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART BOA'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

The Court summarized the factual allegations in the First Amended Complaint ("FAC") in its order on Fidelity's motion to dismiss, also decided today, and will not repeat them here. This order concerns the motion to dismiss brought by Defendants Bank of America Corporation (Wilson's former employer and a Plan fiduciary, FAC ¶ 6), Bank of America Corporation Corporate Benefits Committee (the Plan Administrator and a fiduciary, *id.* ¶ 7), The Bank of America Pension Plan (the Plan itself, *id.* ¶ 12). For simplicity, the Court will refer to all three entities as "BOA," as Defendants do in their motion.

**A.    Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

Wilson appears to state a claim for benefits under the Plan. He plausibly alleges that he was a BOA employee and participant in the Plan. FAC ¶¶ 13-17. He plausibly alleges facts showing an entitlement to a certain level of pension benefits, specifically, the years that he worked at BOA, his status as a Plan participant, and his receipt of pension benefit statements reflecting his level of pension eligibility. *Id.* ¶¶ 13-20. He plausibly alleges facts showing that he made a claim for benefits and that BOA denied him his full benefit. *Id.* ¶¶ 23-34. That's normally enough to state a claim.

To be sure, Wilson pleads his claims in the alternative. His claim for benefits alleges that

the pension statements were completely accurate and there was no 1991 distribution to him.[1]  All of the other claims allege the opposite.  It is obvious that Wilson is pursuing two factually incompatible legal strategies, and no, he can't win on both.  His first goal is to try to get the pension benefits his statements told him he would be eligible for.  If he can't get that, his other claims seek remedies for the years of misinformation he received.  The Court supposes the FAC could have been drafted more clearly by saying "these facts are true for purposes of this claim, whereas these other facts are true for purposes of those claims."  That would have been better than having each cause of action incorporate paragraphs 1-37 by reference, and then having paragraphs 1-37 themselves be cagey about whether the 1991 distribution happened or not.  *See* FAC ¶ 37 (alleging Wilson "does not recall receiving a Plan distribution in 1991," and not squarely alleging whether he did or not).  Nonetheless, the Court understands what is going on.  For claims two through six, the distribution happened; for claim one, it didn't.

As to the claim for benefits, BOA argues that as a matter of law the Committee did not abuse its discretion when it denied Wilson's claim because the information available to it sufficiently indicated that a 1991 distribution had been paid out.  In an abuse of discretion case, the district court must generally base its decision on a benefits claim on the administrative record. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969-70 (9th Cir. 2006).  But Wilson argues that the Court should not consider BOA's abuse of discretion argument on this motion to dismiss because he did not attach the entire administrative record to the FAC – and, indeed, he asserts he doesn't have it all.  ECF No. 26 at pp. 15-16.  In reply, BOA says it provided Wilson with everything he specifically asked for and that his request for "all relevant correspondence and information to explain your rationale for this denial" is too vague, citing a case that held that a request for "a full copy of the administrative record" did not provide clear notice of what the plaintiff was requesting.  ECF No. 31, p.10.  This tends to confirm that the Court likely does not have the full administrative record before it.  The Court is therefore not able to assess on this

---

[1] Even if there had been a 1991 distribution, Wilson still argues he is entitled to all the benefits set forth in the statements.  If Wilson's first claim for relief did not embrace the factual contention that no prior distribution had been paid, then this alternative argument likely could be resolved on a motion to dismiss since it would just be a matter of Plan interpretation.

2

record whether the Committee abused its discretion when it determined that the 1991 distribution occurred. That determination must be made against the full administrative record.

BOA's motion to dismiss the first claim for relief is denied.

**B.     Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a)**

In this claim, Wilson alleges that "Bank of America and the Benefits Committee breached their fiduciary duties to Mr. Wilson by acts and omissions including failing to ensure that they or their delegees provided Mr. Wilson with complete and accurate information regarding the amount of his Plan benefit." FAC ¶ 43. To be precise, the only misinformation alleged in the FAC consists of the pension benefit statements referred to in paragraphs 17-20 and Exhibits C, D and E, which contain estimates of his future pension benefit. As noted, this claim is pleaded in the alternative to the claim for benefits, *see* Fed. R. Civ. Proc. 8(d)(2), which of course assumes those pension estimates were accurate.

The question for this claim for breach of fiduciary duty is whether providing a pension estimate is a fiduciary function. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."). The Ninth Circuit's decision in *CSA 401(k) Plan v. Pension Professionals, Inc.*, 195 F.3d 1135 (9th Cir. 1999), strongly suggests no. The Court cited with approval a Department of Labor Interpretive Bulletin that lists a number of responsibilities in connection with a Plan that do not qualify as fiduciary functions, including "calculation of benefits," "preparation of reports concerning participants' benefits," and the "preparation of employee communications material." *Id*. at 1138 n.2. These pension estimates sound like a combination of those acts. Citing the exact same Bulletin, the First Circuit expressly held that "providing [plaintiff] with an estimate of his future pension benefits was not a fiduciary task." *Livick v. The Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008). *Livick* is on point and is consistent with the Ninth Circuit's analysis in *CSA 401(k) Plan*.

As in *Livick*, Wilson "tries to argue that this case is like those in which the employee was

3

given misleading information while seeking advice about the security of his future benefits. On the face of the complaint, however, all [Wilson] sought and received from [BOA] was an estimate; his benefits had already accrued, he was not choosing among different options, and there was no discussion of the plan itself. This was purely a ministerial request." *Id*. at 29 (citations omitted). For this reason, Wilson's reliance on cases like *Varity Corp. v. Howe*, 516 U.S. 489 (1996), *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730 (9th Cir. 2017), and *In re DeRogatis*, 904 F.3d 174, 192 (2d Cir. 2018), is misplaced. The brief discussion of this issue in *Reichert v. Time*, 2011 WL 5294844, at *4 (N.D. Cal. Nov. 3, 2011), does support Wilson's position but is inconsistent with ERISA's definition of a fiduciary as a person "to the extent" he performs fiduciary tasks. ERISA § 3(21), 29 U.S.C. § 1002(21). *See Pegram*, 530 U.S. at 225-26.

Wilson's opposition argues in the alternative that even if providing pension estimates is not a fiduciary task, BOA had a fiduciary duty to monitor the Committee and Fidelity to ensure they performed this task correctly. However, the FAC contains no allegations plausibly suggesting a failure to monitor. It identifies a single Plan participant – Wilson – who received erroneous information. Even as to this one participant, it alleges a type of error (listing an incorrect number of years of service, not taking into account a prior distribution) that when made once would show up in every statement until corrected. ERISA states that "a fiduciary shall discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The allegations that this one Plan participant received incorrect information come nowhere close to alleging a failure to monitor that would amount to a breach of fiduciary duty.

The Court dismisses Wilson's second claim for relief with leave to amend.

**C.  Claim for Violation of ERISA § 105, 29 U.S.C. § 1025**

For a defined benefit plan, ERISA provides that the administrator "shall furnish a pension benefit statement . . . to a participant or beneficiary of the plan upon written request. ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B). Wilson alleges that BOA did not provide accurate pension benefit statements in response to his requests because all the statements failed to account

4

for the 1991 distribution.  Alternatively, he alleges that BOA failed to monitor Fidelity's delegated performance of this task.  BOA argues there are two problems with Wilson's claim under section 105.  First, he did not submit a written request for a statement.  Second, he does not allege that the administrator failed to provide one, merely that they were inaccurate.  BOA also argues that in the absence of a section 105 violation, there can be no claim for failure to monitor.

BOA is right that the request for a pension statement must be in writing.  That's what the statute says, and case law confirms it.  *See, e.g., Christensen v. Qwest Pension Plan*, 462 F.3d 913, 919 (8th Cir. 2006).  Wilson doesn't disagree.  The real question is when "Wilson went online to NetBenefits and requested pension statements," FAC ¶ 18, was that a written request?  The FAC does not specify what exactly Wilson did online, such as whether he clicked a button that said, "Click here to request a statement," or whether he typed the words "Please send me a pension statement" into the website somewhere.  In the abstract, typing those words into a website seems like it's writing.  Certainly, it's using a keyboard to spell out words into a sentence.  It's not talking or making a phone call.  *See Christensen*, 462 F.3d at 919 (phone calls don't count).

But BOA has a good response.  ERISA § 105 distinguishes how to ask for a statement from how the administrator may provide one.  As noted above, the request must be written.  However, the statement "may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participant or beneficiary."  ERISA § 105(a)(2)(A)(iv), 29 U.S.C. § 1025(a)(2)(A)(iv).  To make the delivery part of the statute meaningful, the word "electronic" must mean something different from, or at least broader than, "written."  And it's hard to believe the word "written" has a different meaning in the first and second sub-subsections of the same subsection of section 105.  So, something must be captured in the word "electronic" that is not captured by the word "written."  And it must be something that is a way a pension benefit statement could be delivered.  An audio recording of a voice message is something that's electronic but not written, *see Christensen*, 462 F.3d at 919, but it's an unlikely way to deliver a pension statement.

When Congress added this language about "electronic" delivery in 2006, *see* Pub. L. No. 109-280, Title V, § 508, 120 Stat. 949 (2006), it probably meant the internet.  *Cf*. ERISA § 104, 29

U.S.C. § 1024(b)(5) ("Identification and basic plan information . . . shall be filed with the Secretary in an electronic format with accommodates display on the Internet . . ."). Fidelity's NetBenefits website seems like it's exactly what Congress had in mind by "electronic" delivery of pension statements. Gone are the old days when statements had to be delivered by mail. Now, Plan participants can go online and get a statement whenever they want. But if this expansion to internet-based delivery is what Congress was allowing when it authorized electronic delivery, and it seems like it was, the failure to say that the request can also be made electronically dooms the argument that using NetBenefits to request statements constitutes a "written" request. Accordingly, the Court holds that using an interactive website to make a request for a pension statement does not amount to a written request under ERISA § 105, 29 U.S.C. § 1025.

In light of the Court's resolution of the "written" request issue, it need not address BOA's alternative argument that errors in pension statements do not render them noncompliant with section 105. Finally, as to the failure to monitor allegation, that is not a claim under section 105, which does not impose monitoring obligations. Those obligations arise from the duty of care a fiduciary is required to exercise, discussed above. As stated, there are no alleged facts that establish a breach of fiduciary duty with respect to monitoring.

Wilson's fourth claim for relief is dismissed with leave to amend.

## D. Conclusion

BOA's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Wilson's second and fourth claims are dismissed with leave to amend. His first claim is not dismissed. Any amended complaint is due in 30 days. BOA's motion to strike is **DENIED** for the reason stated in the Fidelity order.

**IT IS SO ORDERED.**

Dated: June 20, 2019

THOMAS S. HIXSON
United States Magistrate Judge