UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE E. WILSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BANK OF AMERICA PENSION PLAN FOR LEGACY COMPANIES, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-07755-TSH<br><br>**ORDER RE: MOTION FOR RECONSIDERATION AND PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 50, 51 |

## I. INTRODUCTION

This case concerns a dispute over pension benefits Plaintiff Bruce E. Wilson accrued while working for Bank of America ("BOA") from 1972 to 1988 and from 1999 to 2000. In its order granting in part and denying in part Fidelity's first motion to dismiss, the Court denied the motion with respect to the question of whether Wilson's state-law tort claims are preempted by ERISA. ECF No. 33. Fidelity now asks the Court to reconsider its findings on that issue. ECF No. 50. Wilson filed an Opposition to the Motion for Reconsideration (ECF No. 58) and Fidelity filed its Reply (ECF No. 60). For the reasons set forth below, the Court **GRANTS** Fidelity's Motion for Reconsideration, and upon reconsideration, **GRANTS** dismissal of Wilson's state-law claims, claims five and six, on preemption grounds.

Also pending before the Court is Defendants' Partial Motion to Dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 51. Wilson filed an Opposition to that motion (ECF No. 59) and Defendants filed a Reply (ECF No. 61). The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 26, 2019 hearing. *See* Civ. L.R. 7-1. The Court **GRANTS** the motion to dismiss and dismisses claims two, three, and four.

Fidelity's request for judicial notice relevant to its motion to dismiss is also before the Court. ECF Nos. 55. The request is unopposed. The Court **GRANTS** the request.

## II. BACKGROUND

In its order addressing Fidelity's first motion to dismiss (ECF No. 33) the Court detailed the background facts in this case. The Court assumes familiarity with those facts and will not repeat the full discussion here. Broadly, though, this case concerns a dispute over pension benefit amounts Wilson accrued under the Bank of America Pension Plan for Legacy Companies (the "Plan") while employed by BOA and its predecessor. Central to that dispute is Wilson's allegation that Fidelity, while contracted with Plan fiduciaries, provided Wilson Plan pension estimates that were grossly exaggerated and inaccurate. Wilson brought against Fidelity an ERISA claim for breach of fiduciary duty and two state-law claims of professional negligence and negligent misrepresentation. In its first motion to dismiss Fidelity argued that the state-law claims were preempted by ERISA. The Court found they were not. It did, however, dismiss with leave to amend Wilson's ERISA claim against Fidelity and his negligent misrepresentation claim, though on different grounds. In a second order the same day (ECF No. 34), the Court addressed a motion to dismiss filed by the other Defendants (ECF No. 21) and dismissed with leave to amend Wilson's second and fourth claims for ERISA violations.

Fidelity filed a motion for leave to file a motion for reconsideration on July 18, 2019, and the Court granted Fidelity leave to file its motion, which it did August 9, 2019. The Motion for Reconsideration is limited to the question of whether Wilson's professional negligence claim can survive ERISA preemption.[1]

Wilson filed his SAC on July 19, 2019 asserting the same claims against the same parties as in his First Amended Complaint ("FAC"). Defendants together filed a motion to dismiss claims two, three, four and six in the SAC on August 9, 2019, which Wilson has opposed.

---

[1] Because the Court dismissed Wilson's other state-law claim, claim six, on other grounds in its previous order, Fidelity moves for reconsideration only regarding count five. However, it and the other Defendants continue to maintain in their motion to dismiss that claim six is also preempted.

2

## III. LEGAL STANDARDS

Trial courts have inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment. Fed. R. Civ. P. 54(b). Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1254 (9th Cir. 1999) (per curiam) (internal quotation and citation omitted). Furthermore, "[a] motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

The Northern District of California has local rules governing motions for reconsideration. Under Civil Local Rule 7-9, a party must seek leave to file a motion for reconsideration before judgment has been entered. Civ. L.R. 7-9(a). A motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments. Civ. L.R. 7-9(b). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must provide a defendant with "fair

notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, the Court may deny leave to amend for several reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   FIDELITY'S REQUEST FOR JUDICIAL NOTICE

Defendants request the Court take judicial notice of a portion of a public record, to wit, a portion of the official court files of the Los Angeles Superior Court in the matter of *In re Marriage of Bruce E. Wilson and Sheila Wilson*, the records from divorce proceedings to which Wilson was a party. Wilson does not oppose the request.

Under Federal Rule of Evidence 201(b), the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b). The Court grants judicial notice of these records, as they are records from a state agency that are not subject to reasonable dispute. *Parker v. Dean Transp., Inc.*, 2013 U.S. Dist. LEXIS 184386, *10 (C.D. Cal. Oct. 15,

4

2013) ("[Defendants] ask the Court to judicially notice the state court records from Plaintiff['s] divorce proceedings . . . . The Court grants judicial notice as they are records from a state agency, which are capable of accurate and ready determination within the meaning of Rule 201(b)").

### V. FIDELITY'S MOTION FOR RECONSIDERATION

In its order addressing Fidelity's first motion to dismiss, the Court based its ERISA preemption holding on *Paulsen v. CNF, Inc.*, 559 F.3d 1061 (9th Cir. 2009), which it found controlling on the issue of whether Wilson's state-law claims were preempted. Fidelity argues that the Court failed to recognize the ways in which *Paulsen* is distinguishable from this case. It points to *Wise v Verizon Comms., Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010), a case where the Ninth Circuit found ERISA preemption of various state-law claims, as being more analogous to this case. It argues that *Paulsen* has been recognized by courts within this Circuit as fact-specific and as not articulating broad principals against preemption. It cites to several decisions post-*Paulsen* in which state-law negligence claims were held preempted by ERISA and argues those cases are more like this matter. The Court recognizes now that it may have overlooked certain relevant caselaw and accordingly will reconsider the preemption issue.

As the Court discussed in its earlier order, ERISA preemption can be predicated on either an impermissible "connection with" or "reference" to an ERISA-covered plan. In *Paulsen*, the Ninth Circuit found that the plaintiff's professional negligence claims had no forbidden "reference to" an ERISA plan because the claims were "based on common law negligence principles and California Civil Code §§ 1708 and 1714(a)." Those laws, the court wrote, "do not act 'immediately and exclusively' on ERISA plans, and the existence of an ERISA plan is not essential to those laws' operation." 559 F.3d at 1082. That finding was essential to this Court's holding that Wilson's claims were not preempted by a forbidden 'reference to' Wilson's pension Plan. However, as Fidelity points out, not long after *Paulsen* (and before[2]) the Ninth Circuit said

---
[2] *E.g.*, *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) ("In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient 'reference' exists to support preemption.") (citing *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324-25 (1997)).

5

of the 'reference to' inquiry that "[s]tated another way," it means that "where 'the existence of an ERISA plan is a critical factor in establishing liability' under a state cause of action, the state law claim is preempted." *Wise*, 600 F.3d at 1190 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136, 139-140 (1990)). It added, "ERISA's preemption provision functions 'even when the state action purports to authorize a remedy unavailable under the federal provision.'" *Wise*, 600 F.3d at 1190 (quoting *Ingersoll*, 498 U.S. at 144).[3] The Ninth Circuit found the plaintiff's state-law claims were preempted because her complaint "necessarily reference[d]" an ERISA plan. "The state law theories of fraud, misrepresentation, and negligence all depend on the existence of an ERISA-covered plan to demonstrate that Wise suffered damages: the loss of insurance benefits." *Id.* at 1191.

Under *Wise*, it is clearer that Wilson's professional negligence and negligent misrepresentation claims are preempted.[4] The basis of those claims is that Fidelity allegedly produced Plan pension benefit estimates with grossly inaccurate benefits accrual information, and that Wilson's reliance on that information caused him harm. While neither professional negligence nor negligent misrepresentation act immediately or exclusively upon ERISA plans—they are common law torts—the success of Wilson's claims depends on the existence of an ERISA-covered plan. *See, e.g.*, *Reichert v. Time Inc.*, 2011 U.S. Dist. LEXIS 127398, *13 (N.D. Cal. Nov. 3, 2011) ("At the root of this claim is the allegation that Fidelity's inaccurate estimates related to the Plan, and for this reason plaintiffs claim for professional negligence is preempted by ERISA."). If Wilson had received the pension benefits Fidelity's estimates told him he would get,

---

[3] Wilson makes much of the significance of *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 649 (1995), which Wilson argues was a "turning point" in ERISA preemption jurisprudence. Pl.'s Opp'n to Fidelity's Mot. for Recons. 4, ECF No. 58. He argues that most of the court of appeals decisions on which Defendants rely pre-date *Travelers*. *Id.* at p. 18. However, *Wise* (2010) and *Providence* (2004) (see note 2 above)—both cited by Fidelity—are Ninth Circuit cases coming after *Travelers*, and both articulate the same inquiry, which has been the test used by district courts in this circuit in several decisions.

[4] Wilson argues that *Wise* is not analogous to this case because the claims in that case "implicat[ed] an ERISA-regulated relationship," ECF No. 58, p. 8-9, and Wilson's relationship with Fidelity is not such a relationship. Yet the Ninth Circuit in *Wise* found the state-law claims preempted based on an impermissible reference to an ERISA plan, not an impermissible connection to one, and an impermissible reference can arise even without an ERISA-regulated relationship.

he would not be suing. Put another way, but for the dispute over benefits under the Plan, Wilson would have no state-law claims to bring. *See, e.g.*, *Josef K. v. Cal. Physicians' Serv.*, 2019 U.S. Dist. LEXIS 92730, *9 (N.D. Cal. June 3, 2019) ("[T]he FAC alleges that Maximus violated these state laws in the course of its review of plaintiffs' ERISA plan. . . . [B]ut for the . . . ERISA plan, plaintiffs would not have suffered the harm alleged with respect to the interference with contract claim."); *Pizza v. Fin. Indus. Regulatory Auth.*, 2013 U.S. Dist. LEXIS 64521, *10-11 (N.D. Cal. May 6, 2013) (plaintiff's fraud claims preempted because they "'relate[d] to' an ERISA plan, as the alleged misrepresentation pertains solely to plan benefits and [plaintiff] assertedly lost those benefits acting in reliance thereon."); *compare Bernstein v. Health Net Life Ins. Co.*, 2012 U.S. Dist. LEXIS 169817, *13 (S.D. Ca. Nov. 29, 2012) ("State law claims do not 'relate to' the ERISA plan if the claim can exist without the defendant's failure to pay the benefit.") (citing *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001)).

The facts of this case are much like those in *Hawkes v. Wells Fargo & Co., et al.*, No. 17-cv-00632 (N.D. Cal. Jan. 30, 2018). In that case, Hawkes alleged that her plan, plan administrators, and third-party administrator had provided her an online pension calculator which allowed plan participants to view their projected pension benefits.[5] Hawkes used the calculator on several occasions to determine her projected plan benefits based on certain ages. She alleged that the online projections were inaccurate, and that she relied on the inaccurate, higher projections in determining how much money to save and in deciding to buy a new house. She brought a claim for professional negligence and negligent misrepresentation against a third-party defendant who had provided record-keeping and administration services to the plan. The Court found those claims were preempted. "Questions regarding the contours of Hewitt's duty to Plaintiff and whether Hewitt breached that duty would require analysis not only of any contract Hewitt had with the Wells Fargo Plan, but also the terms of the Wells Fargo Plan itself." *Hawkes*, at *12. "Additionally," the Court added, "to determine whether Plaintiff justifiably relied on Hewitt's allegedly erroneous projection, the finder of fact would have to look to the Wells Fargo Plan's

---

[5] The decision notes that the plaintiff did not explain the respective roles of each defendant in providing the online pension calculator.

7

terms, among other things, to see [if] Plaintiff's reliance was reasonable."[6] *Id.* Questions about the amount of benefits to which Wilson was in fact entitled, as opposed to the representations Fidelity made, necessarily require reference to the Plan's terms. So too would determining whether his reliance on Fidelity's projections was reasonable.

The Court also finds persuasive *Groves v. Kaiser Foundation Health Plan Inc.*, 2014 U.S. Dist. LEXIS 94358 (N.D. Cal. July 10, 2014). On facts and claims like those alleged here, the Court there wrote:

> Plaintiff's proposed SAC confirms that plaintiff's negligence claims are preempted. Plaintiff asserts that defendant AON[7], the party allegedly responsible for calculating and communicating plaintiff's retirement benefits, "had a duty in executing accurate mathematical calculations with reasonable care" (*id.* ¶ 31) and "providing retirees with information regarding such calculations" (*id.* ¶ 37). Nothing in the proposed SAC []or in plaintiff's moving papers suggests that her negligence claims are the sort of "garden variety torts which only peripherally impact daily plan administration" and thus are not preempted by ERISA, notwithstanding their allegedly having been commissioned by an ERISA plan administrator. *See Dishman*, 269 F.3d at 984. On the contrary, the SAC confirms that the alleged torts were commissioned *in the course of* daily plan administration. . . . As such, the negligence and negligent misrepresentation claims contemplated by plaintiff's proposed SAC would be preempted by ERISA if plaintiff were permitted leave to file that amended pleading.

*Id.* \* 4-5. Here also the FAC alleges that Fidelity committed negligence in the course of plan administration. It asserts that Fidelity was a third-party administrator, and "was responsible for

---

[6] In reference to *Paulsen*, the Court in *Hawkes* wrote:
> The Court is aware that *Paulsen* contains seemingly broad language suggesting that California tort claims are not subject to preemption under the "reference to" prong. *See Paulsen*, 559 F.3d at 1082 ("[Professional negligence claims] do not act 'immediately and exclusively' on ERISA plans, and the existence of an ERISA plan is not essential to these laws' operation."). The Court believes, however, that *Paulsen* was not articulating a broad principle, but rather was making a statement based on the specific facts of that case. The Court notes that subsequent to *Paulsen*, the Ninth Circuit found a negligence, misrepresentation, and fraud claims preempted under the "reference to" prong because the claims "all depended on the existence of an ERISA-covered plan." *Wise v. Verizon Comm'cns Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010).

*Hawkes*, at \*11 n.7.

[7] AON was alleged to be a non-fiduciary service provider to the plan. *See Groves v. Kaiser Found. Health Plan, Inc.*, 32 F. Supp. 3d 1074, 1077 (N.D. Cal. Mar. 14, 2014).

8

maintaining a website entitled NetBenefits, by which it attempted to satisfy the Plan Administrator's obligations under ERISA § 105(a), 29 U.S.C. § 1025(a), among other functions[.]" FAC ¶ 9; SAC ¶ 9. And it asserts that Fidelity's services were a "defined benefit plan administration." FAC ¶ 10; SAC ¶ 10.

Having reconsidered the issue, the Court is persuaded that Wilson's state-law claims have an impermissible reference to the Plan, and thus are preempted by ERISA. *See also, e.g.*, *Sender v. Franklin Res., Inc.*, 2011 U.S. Dist. LEXIS 121484, at *17 (N.D. Cal. Oct. 20, 2011) (finding complete preemption of plaintiff's claims and writing, "Here, although Plaintiff's claim is not dependent on interpreting the terms of the ERISA plan, it is dependent on the existence of the ERISA plan and required distribution of benefits from that plan."); *compare Abraham v. Norcal Waste Sys.*, 265 F.3d 811, 824 (9th Cir. 2001) ("The claims asserted by all Plaintiffs in the state court action, however, do not fall within the scope of § 1132(a) because those claims are based . . . not upon any rights that are conferred, enforced, or governed by ERISA (nor upon a violation of the terms of a plan)."). Accordingly, the Court dismisses claims five and six.[8]

Because of the nature of the claims and this action, amending the complaint could not undo preemption. Indeed, the Court reconsidered its decision with regards to the FAC, but the same reasoning and conclusion holds true for the SAC. Thus, a dismissal with prejudice is appropriate because further amendment would be futile. *Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 2019 U.S. App. LEXIS 20083, *6 (9th Cir. July 5, 2019) (district court's dismissal with prejudice was appropriate because in the second amended complaint plaintiff, "fail[ed] to present any facts which could cure the defect underlying the district court's dismissal"); *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1187 n.5 (9th Cir. 2017) (dismissal upheld where complaint could not be saved by further amendment), *cert. denied*, 138 S. Ct. 1262 (2018).

---

[8] The Court had already dismissed Wilson's negligent misrepresentation claim on different grounds. However, dismissal on preemption is appropriate. To the extent Defendants argue in their joint motion to dismiss for dismissal of either state-law claim on other grounds, those arguments are moot, and the Court will not address them here.

9

## VI. DEFENDANTS' MOTION TO DISMISS CLAIMS IN THE SECOND AMENDED COMPLAINT

Defendants have moved for dismissal of the SAC's breach of fiduciary duty claims. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires fiduciaries to protect participants and beneficiaries, providing in relevant part that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> . . . .
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

In the third claim, the SAC asserts that Fidelity breached its fiduciary duty by repeatedly providing Wilson with inaccurate information regarding the amount of his pension benefits, and by failing maintain internal controls to ensure that information it was providing on its NetBenefits website was consistent with Wilson's Plan records. SAC ¶ 49A. In the second claim, the SAC asserts that BOA and the Benefits Committee breached their fiduciary duties to Wilson by failing to ensure that Fidelity provided Wilson with complete and accurate information regarding the amount of his Plan benefits. SAC ¶ 43. Defendants counter that neither BOA or Fidelity are Plan fiduciaries. As to BOA, Fidelity, and the Committee, Defendants argue that even if they were fiduciaries, calculating benefits and preparing benefit estimates were not fiduciary duties such that they could support a claim for breach of fiduciary duty.

### A. Wilson's Claim Against Fidelity for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a)

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or the property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21), 29 U.S.C. § 1002(21).

A fiduciary may be named in the Plan instrument, and "ERISA grants a named fiduciary broad authority to 'control and manage the operation and administration of the plan.'" *Harris v. Amgen, Inc.*, 788 F.3d 916, 944 (9th Cir. 2015) (quoting 29 U.S.C. § 1102(a)(1), (2)). However, "ERISA 'defines "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties -- and to damages –' under the statute." *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 751 (9th Cir. 2005).

Concerning Fidelity, the question is whether it was acting as a fiduciary in preparing and providing Plan benefit estimates. *Pegram v. Herdrich*, 530 U.S. 211, 226 ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."). The Court previously relied on *CSA 401(k) Plan v. Pension Professionals, Inc.*, 195 F.3d 1135 (9th Cir. 1999) when it found that Fidelity was not. ECF No. 33, p 3. In *CSA 401(k) Plan*, the Ninth Circuit wrote that "third-party administrators are not fiduciaries if they perform ministerial functions, including the preparation of financial reports." 195 F.3d at 1138. It cited a Department of Labor Interpretative Bulletin (the "DOL Bulletin") which states that "persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures" are not fiduciaries if performing certain administrative functions "within a framework of policies, interpretations, rules, practices and procedures made by other persons." Among the administrative functions the DOL Bulletin lists are "calculation of benefits," "preparation of reports concerning participants' benefits," "application of rules determining eligibility for participation or benefits," and "preparation of employee communications material." 29 C.F.R. § 2509.75-8. This Court found that Fidelity's actions in this case amounted to essentially that. *See also Livick v. The Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008) (human resources representative was not a functional fiduciary because providing plaintiff with an estimate of his future pension benefits was not a fiduciary task).

In the SAC, Wilson adds allegations that Fidelity was a fiduciary because it had discretion

11

to decide Wilson's benefit claim in the first instance, because it exercised discretionary authority in the management and administration of the Plan, and because its role included Plan interpretation. SAC ¶¶ 48A, 48B, 48C. Those allegations are insufficient because ERISA defines a fiduciary as a person "to the extent" he performs fiduciary tasks. ERISA § 3(21), 29 U.S.C. § 1002(21). *See Pegram*, 530 U.S. at 225-26. Here, Fidelity's alleged breach of fiduciary duty consisted of providing inaccurate pension estimates, but providing those estimates is not a fiduciary activity. *See Livick*, 524 F.3d at 29 ("Livick tries to argue that this case is like those in which the employee was given misleading information while seeking advice about the security of his future benefits. On the face of the complaint, however, all Livick sought and received from Brundige was an estimate: his benefits had already accrued, he was not choosing among different options, and there was no discussion of the plan itself. This was purely a ministerial request.").[9]

Wilson also argues that Fidelity was acting as a fiduciary when it provided those pension estimates because it was not acting "within a framework of policies, interpretations, rules, practices and procedures made by other persons." However, that argument is ultimately the same as the argument addressed in the preceding paragraph.

Wilson's argument goes back to the 1975 DOL Bulletin. The DOL Bulletin is written in a question-and-answer format. Question D-2 asked:

> Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan[?]

29 C.F.R. § 2509.75-8. It then listed 11 different activities, such as calculation of benefits, preparation of reports concerning participants' benefits, processing claims, and so on. The DOL Bulletin then answered question D-2 as follows:

---

[9] The SAC also alleges that Fidelity "fail[ed] to establish or maintain internal controls sufficient to ensure that information provided on the NetBenefits website was consistent with information in the Plan records in Fidelity's possession from at least 2007 to 2017." SAC ¶ 49A. However, a computer glitch affecting one Plan beneficiary – and that is all that is alleged here – does not plausibly suggest insufficient internal controls. It plausibly suggests only the absence of perfection, and fiduciary duty does not require perfection. *See* 29 U.S.C. § 1104(a)(1)(B).

> No. Only persons who perform one or more of the functions described in section 3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs purely ministerial functions such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

From this Wilson argues that Fidelity was acting as a fiduciary because nothing in the SAC establishes that it was acting "within a framework of policies, interpretations, rules, practices and procedures made by other persons," and indeed, the SAC alleges that this was not true. However, Wilson's argument is flawed. The DOL Bulletin question D-2 is just a list of 11 different non-fiduciary tasks: Doing *those things* does not cause someone to become a fiduciary. For purposes of this motion to dismiss, the Court assumes that Fidelity was acting as a fiduciary to the extent that it performed the activities alleged in paragraphs 48A, 48B and 48C in the SAC. However, the *breach* allegation concerns an erroneous pension estimate, and providing such an estimate resembles the activities that the DOL Bulletin says do not give rise to fiduciary status. In other words, even if Fidelity was acting as a fiduciary when it did other things, it was not acting as a fiduciary when it provided Wilson the pension estimates.

Wilson's third claim is dismissed. The SAC amended complaint failed to cure the deficiencies of the FAC, and dismissal with prejudice is appropriate.

### B. Wilson's Claim Against BOA and the Benefits Committee for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a)

As to BOA and the Benefits Committee, Wilson asserts they breached their fiduciary duties in failing to ensure that Fidelity provided complete and accurate information on the amount of benefits he was due, and that they failed to implement controls to ensure that the NetBenefits website did not contain "computer glitches" that provided misinformation.

Moving first to the computer glitch argument, the Court notes that the SAC does not allege any specific facts that support the conclusion that Fidelity discovered that a computer glitch was responsible for the inaccurate information Wilson received. Presumably, that idea came from oral

13

argument, wherein Defendants' counsel speculated that a computer error might have occurred ("I can speculate what happened…", ECF No. 41, 29:2-3). But the SAC does not state Wilson's foundation for this belief, and it amounts to mere speculation (with or without considering its likely origins in oral argument). The Court need not accept it as true. *See, e.g.*, *Anderson v. Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1235 (N.D. Cal. 2015) ("Speculation will not suffice; allegations supporting claims must describe 'more than a sheer possibility . . . .'") (quoting *Iqbal*, 556 U.S. at 578).

Turning now to Wilson's arguments, he maintains that BOA and the Committee failed to monitor Fidelity, which failure led to the repeated, undetected error in calculating his Plan benefit estimates, which failures were a breach of fiduciary duty. As a preliminary note, Wilson's Opposition puts forth no caselaw that stands for the proposition that a fiduciary must monitor a non-fiduciary doing ministerial tasks. "Where the discretionary authority to select or appoint *fiduciaries* exists, a director's duty to monitor those appointees also exists." *In re Uniphase Corp. Erisa Litig.*, 2005 U.S. Dist. LEXIS 17503, *15 (N.D. Cal. 2005) (emphasis added) (citing 29 C.F.R. § 2509.75-8, D-4); *see also, e.g.*, *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005) ("An appointing fiduciary's duty to monitor his appointees is well-established.") (citing cases from the Fourth, Seventh, and Eighth Circuits). A fiduciary may need to monitor a non-fiduciary if the fiduciary "rel[ies] on information, data, statistics or analyses furnished by" those persons. *See* 29 C.F.R. 2509.75-8, F-11 ("A plan fiduciary may rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan, provided that he has exercised prudence in the selection and retention of such persons."). But neither of those is the case with Fidelity; it was acting as a non-fiduciary in preparing the Plan benefit estimates, and Wilson has not alleged that BOA or the Benefits Committee relied on those estimates. To the contrary, Wilson is arguing that the fiduciaries denied the accuracy of those estimates.

Nonetheless, even if BOA and the Committee had a duty to monitor Fidelity as a third-party provider of benefits estimates, the facts alleged don't plausibly suggest that they failed to do so. Even after amending, Wilson still identifies a single Plan participant—himself—who received

14

Plan benefit estimates with inaccurate information. That inaccurate information apparently resulted from a single error, listing years of service without considering a single prior distribution. Wilson argues that the duration, persistence, and magnitude of the misrepresentation strongly support a finding of failure to monitor. But again, that single entry, gone-unnoticed would show up repeatedly in benefit estimates until noticed and corrected. ERISA demands that "a fiduciary shall discharge his duties with respect to the plan . . . with the care, skill, prudence, and diligence under the circumstance then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The allegations in the SAC, that BOA or the Benefits Committee weren't aware that Fidelity missed one error in one plan, do not create the inference that BOA or the Committee failed to prudently discharge their duties with respect to the Plan.

The Court dismisses Wilson's second claim. Given that Wilson was given opportunity to amend, and that after doing so, the SAC alleges no new facts relevant to this claim, dismissal with prejudice is appropriate.

## C. Wilson's Claim Against the Benefits Committee for Violation of ERISA § 105, 29 U.S.C. § 1025

The SAC re-alleges claim four, but states that the claim was not amended and was re-alleged to preserve the claim for appeal. The Court dismisses claim four with prejudice.

## VII. CONCLUSION

For the reasons stated above, the Court:

(1) Fidelity's Motion for Reconsideration, ECF No. 50, is **GRANTED**.

(2) Defendants' Partial Motion to Dismiss Second Amended Complaint, ECF No. 51, is **GRANTED**.

(2) Plaintiff's second, third, fourth, fifth, and sixth claims for relief are **DISMISSED WITHOUT LEAVE TO AMEND**.

(3) Defendants' request for judicial notice, ECF No. 55, is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 18, 2019

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ THOMAS S. HIXSON
United States Magistrate Judge